OPINION OF THE COURT
JORDAN, Circuit Judge.
Appellants J.H., a minor child, and his parents appeal from an order of the United States District Court for the Eastern District of Pennsylvania granting the Souderton Area School District (the “School District”) summary judgment on the administrative record, after finding that the School District had provided J.H. with a free appropriate public education for the 2007-08 school year. For the reasons that follow, we will affirm.
I. Background

A. The IDEA

The claims at issue arise under the Individuals with Disabilities in Education Act (“IDEA”), which ensures that children with disabilities have access to a free appropriate public education (“FAPE”). 20 U.S.C. § 1412(a)(1). As part of the obligation to provide a FAPE, school districts receiving federal funding must design and implement an Individualized Education Plan (“IEP”) for each student with a disability. 20 U.S.C. § 1414(d)(2)(A). The IEP “consists of, inter alia, a specific statement of a student’s present abilities, goals for improvement, services designed to meet those goals, and a timetable for reaching the goals via the services.” Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 755 (3d Cir.1995). The IEP “must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student’s intellectual potential.” Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 240 (3d Cir.2009) (quoting Shore Reg’l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir.2004)) (internal quotations omitted).
*757 The IDEA provides that parents such as J.H.’s may present a complaint to a local educational agency “with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.... ” 20 U.S.C. § 1415(b)(6). The parents may then request a due process hearing, id. at § 1415(f), the results of which generally may be appealed to a state educational agency, id. at § 1415(g). Parties to such an appeal who are aggrieved by the final decision “shall have the right to bring a civil action with respect to the complaint ... which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.” Id. at § 1415(i)(2)(A). The district court is empowered to “grant such relief as [it] determines is appropriate.” Id. at § 1415(i)(2)(C)(iii).

B. Facts

We need not add anything to the thorough factual rendition provided by the District Court in its memorandum opinion, and we note here only the specific facts essential to the disposition of this appeal.
J.H. is a minor child who suffers from learning disabilities. He has received special education services in reading, math, and writing. Up through his fifth grade year, corresponding to the 2005-06 school year, J.H. was enrolled in the Souderton Area School District. His parents then unilaterally removed him from the School District and placed him in The Crossroads School (“Crossroads”), a private school for children with learning disabilities. The School District nevertheless continued to draft IEPs for him, in keeping with the IDEA, 20 U.S.C. § 1414(d)(2)(A).
In August 2006, J.H. and his parents filed an administrative complaint against the School District and asked for a due process hearing, seeking tuition reimbursement for J.H.’s enrollment in Crossroads, as well as compensatory education for the 2004-05 and 2005-06 school years. On April 20, 2007, the officer who conducted that due process hearing concluded that, while J.H. was entitled to some compensatory education for the 2004-05 and 2005-06 school years, the School District had satisfied its obligation to offer J.H. a FAPE for the 2006-07 year. The hearing officer thus declined to address in detail the tuition reimbursement request. That decision was upheld on June 2, 2007 by the Pennsylvania Special Education Appeals Panel (“Appeals Panel”).[1]
Shortly thereafter, the School District issued a new IEP for J.H. for the 2007-08 school year. On September 10, 2007, J.H. and his parents rejected the 2007-08 IEP because, in their view, it failed to address certain needs. They requested a second administrative hearing, seeking tuition reimbursement for J.H.’s Crossroads tuition for the 2007-08 year. On February 6, 2008, the hearing officer ruled in favor of the School District, finding that, since the last hearing officer’s decision, “nothing has changed except that the school district has strengthened its proposed IEP.” (App. at 74.) J.H. and his parents once again appealed. On March 28, 2008, the Appeals Panel reversed the hearing officer’s ruling, finding that “[t]here were a number of deficiencies in the proposed IEP.” (App. at 64.) In a five-page, opinion, the Appeals *758 Panel held that, given J.H.’s “severe difficulty with processing, ... the proposed IEP does not address [his] needs in a sufficiently focused, systemic and intensive manner [and] ... is not calculated to provide meaningful education benefit.” (App. at 65.) The Panel thus awarded private school tuition reimbursement for the 2007-OS school year.
The School District then filed the case that is before us now. The School District’s federal complaint asserts that the Appeals Panel erred on multiple grounds and that, because the strengthened IEP is “based on, and is very similar to, the previous IEP,” the Panel has effectively “acted to reverse all the prior administrative decisions .... ” (App. at 9.) The parties filed cross-motions for summary judgment on the administrative record.
On February 11, 2009, in a well-reasoned and painstakingly detailed opinion, the District Court overturned the Appeals Panel’s decision and granted summary judgment in favor of the School District. Souderton Area Sch. Dist. v. J.H., Civ. A. No. 08-2477, 2009 WL 349733 (E.D.Pa. Feb.11, 2009). The Court began by noting that “the Appeals Panel report is sparse [and] provides little explanation as to why it found certain items objectionable. It failed to cite to items in the record in a meaningful manner. In short, its conclusions are clear; its reasoning, less so.” Souderton, 2009 WL 349733, at *5 n. 15. Then, the Court comprehensively reviewed several reports drafted by specialists, prior IEPs, and testing materials to conclude that, despite the Appeals Panel’s findings, (1) the IEP’s statement of present levels of J.H.’s education performance is not imper-missibly vague; (2) the IEP’s annual goals are measurable; (3) the IEP contains numerous specifically designed instructions to address J.H.’s weaknesses; (4) the IEP includes an objective measure of achievement regarding J.H.’s writing skills; (5) the IEP adequately provides the services necessary to address J.H.’s alleged speech and language needs; and (6) the absence of occupational therapy (“OT”) services does not make the IEP inadequate. Id. at *6-*14.
J.H. and his parents timely appealed.[2]
II. Discussion[3]
In an IDEA lawsuit, a district court exercises modified de novo review over state administrative proceedings. S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir.2003). The reviewing court is obliged to give “due weight” to the underlying administrative record, id. (citation omitted), which requires the district court “to consider the ‘factual findings from the administrative proceedings [to be] ... prima facie correct’ and, if the court fails to adopt those findings, it must explain its reasons for departing from them.” Mary T., 575 F.3d at 241 (citing Shore Reg’l High Sch. Bd. of Educ., 381 F.3d at 199). As in the administrative proceedings, J.H. and his parents bore the burden of proving that the School District failed to offer a FAPE for J.H. See L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 392 (3d Cir.2006) (“[A]ppellants bear the burden of proof when challenging the appropriateness of the relevant IEPs.”). We review the district court’s factual findings for clear error, but give plenary review to the district court’s legal conclusions. Id.
*759 J.H.’s parents assert that the District Court erred in four ways: first, in concluding that the proposed IEP provided a FAPE with regard to J.H.’s writing needs; second, in concluding that the proposed IEP provided a FAPE with regard to J.H.’s OT needs; third, in finding that J.H.’s need for speech and language therapy was adequately addressed in the initial due process hearing and Appeals Panel decision; and fourth, in reversing the second Appeals Panel’s tuition reimbursement award. (Appellant’s Op. Br. at 14, 20, & 24.) We address each of those contentions 'in turn.
A. The IEP and J.H. ’s Writing Needs
The parents argue that the District Court “overlook[ed] the clear failure [of the IEP] to appropriately assess J.H.’s writing....” (Appellant’s Op. Br. at 14.) Specifically, they challenge the ways in which the School District, through the IEP, calculated J.H.’s present level of writing. The School District obtained information about J.H.’s present writing level from three different sources: his progress reports during his time at Crossroads, the results of his 2007 Woodcock Johnson Third Edition Test (“WJ III”), and a Pennsylvania System of School Assessment (“PSSA”) rubric-based writing sample. Souderton, 2009 WL 349733, at *6.
The parents’ first complaint about the School District’s evaluation is that “the WJ III is not designed to provide the kind of information needed to draft IEP goals ... and does not identify a student’s specific strengths and weaknesses.” (Appellant’s Op. Br. at 17.) However, in administering the WJ III, the School District was simply complying with a prior recommendation of the first hearing officer, who wrote:
The IEP would be enhanced by the addition of ‘annual administration of a standardized achievement assessment instrument such as the WJ III’ under the progress monitoring section of each goal----It is also appropriate, and the District is highly advised, to use the WJ III or some other similar instrument with a nationally normed well-researched sample to assess writing.
(App. at 269.) Thus, the hearing officer specifically encouraged the use of the WJ III, indicating that it is a “nationally normed” means to assess writing. (Id.) Moreover, while the Appeals Panel found error with other sources used to obtain present levels, it found no error with the School District’s use of the WJ III.
Second, the parents contend that the PSSA rubric-based writing assessment has “repeatedly been found to be inappropriate.” (Appellant’s Op. Br. at 19.) Before the District Court, they cited reports describing the PSSA as “subjective and not measurable.” Souderton, 2009 WL 349733, at *9, n. 25. The PSSA, however, was not the only test administered to J.H. Rather, it was given along with the WJ III. As the District Court noted, while the PSSA writing rubric may be insufficient when given alone, “when considered in conjunction with an unquestionably objective measure of achievement Dike the WJ III], the rubric may prove to be more effective.” Id. at *9 n. 25.
Finally, the parents contend that J.H. required a research-based writing program to address his weaknesses in writing, instead of the rubric-based program found in the PSSA. That argument, though, ignores that a rubric-based writing assessment is approved for use in public schools throughout the state and, contrary to the parents’ contention, is not entirely subjective. Its use has been identified as a “best practice” by the School District’s language arts coordinator, and, indeed, it is used to assess all student populations, including disabled students. In light of that record, the District Court did not err in holding that the School District’s “proposed use of the [rubric-based] writing process is suffi *760 cient to provide J.H. with a FAPE.” Souderton, 2009 WL 349733, at *10.

B. The IEP and J.H. ’s OT Needs

The parents also argue that the District Court was wrong to hold that the proposed IEP provided J.H. a FAPE, given his unmet OT needs. As the District Court noted, however, the parents did not provide the School District with an OT evaluation of J.H. until well after the school year had begun and the School District had already formulated the IEP. The order of events surrounding OT services is as follows.
On April 20, 2007, the first hearing officer found that the School District had satisfied it obligation to offer a FAPE for the 2006-07 school year, even though there were no provisions in the IEP for OT services for J.H. That finding was confirmed by the Appeals Panel the following June. Thereafter, during an IEP team meeting held on August 28, 2007, J.H.’s parents mentioned that J.H. had undergone a private OT evaluation over the summer and that they were now waiting for a formal written report from that evaluation. The 2007-08 IEP was sent to J.H. and his parents the following day. It specifically noted that the private OT report was pending, and it represented that the OT report would be presented to the IEP team when it was provided to the School District.
On September 10, 2007, after rejecting the School District’s 2007-08 IEP, J.H.’s parents sought a second administrative hearing. In their filing, they did not identify the lack of OT services as a reason for rejecting the IEP. The next day, they received the private OT report, but they did not provide it to the School District until October 14, 2007, well after the IEP had been formulated. Upon receipt of the OT report, the School District immediately issued a revised IEP, which noted that the School District had received the private OT evaluation. The School District also inserted into the IEP a clause providing for J.H. to be reevaluated for potential OT needs within thirty days after his return to the school. On October 19, 2007, the School District requested consent from J.H.’s parents to conduct its own OT evaluation of the child.[4]
In February of the following year, at the second administrative hearing, the hearing officer found that the private OT report was “equivocal” and that the School District was “justified in requesting permission to perform its own OT evaluation.” (App. at 76.) The hearing officer thus held that the lack of OT services did not mean that the IEP was inadequate. “It is possible,” the officer said, “that, after further evaluation, it will become clear that J.H. requires OT services. The privately-secured OT report alone is not enough, however, to demonstrate ... that the School District’s IEP is inappropriate.” (Id.) We agree. Appellants’ contention that the IEP should have provided for OT services assumes a recognition of OT needs that did not exist when the IEP was created. When the issue of OT needs surfaced, the School District reasonably offered to reevaluate J.H. for those needs within thirty days upon his return to public school, which has not yet occurred.[5] We cannot *761 say that the District Court erred in determining that, under the circumstances, the IEP was adequate.

C. J.H.’s Speech and Language Needs

The parents next argue that the proffered IEP failed to appropriately address J.H.’s speech and language needs. First, they say that the initial due process hearing never actually addressed whether J.H. requires speech and language services, and thus, that the District Court was mistaken in considering the impact that hearing had on the development of the IEP. That assertion, however, is simply not supported by the record. The first hearing officer’s decision included a finding of fact that J.H. did not appear to have a speech or language disability and was thus not eligible for speech and language services. Similarly, the Appeals Panel, after noting that “the parents [had] requested a speech/language evaluation which the [School] District commissioned,” held that “the speech/language specialist stated that [J.H.] did not present a speech/language disability and thus was not eligible for services in this area.” (App. at 273.) Accordingly, the District Court correctly observed that the initial hearing officer and Appeals Panel were “presented with all of these testing results, and both found that J.H. was ineligible for additional speech and language services.” Souderton, 2009 WL 349733, at *12. As noted by the District Court, the first round of administrative proceedings resulted in the conclusion that — despite the absence of speech and language services — the IEP was sufficient. That conclusion “understandably led [the School District] to believe these services were not necessary.” Id. The School District thus “reasonably relied on the decisions [from the first round of administrative proceedings] when drafting the IEP.” Id.
The parents next argue that the District Court erred because, even if the School District could reasonably rely on the decisions from the first round of administrative proceedings, evidence has come to light since those proceedings that shows that the IEP cannot be adequate without speech and language services. (Appellant’s Op. Br. at 21.) Specifically, the parents point to evidence that J.H. was provided with speech and language therapy during his 2005-06 year at Crossroads. However, the foundations for the parents’ argument did not arise after the initial administrative proceeding, and, in any event, the District Court considered the very evidence to which the parents now allude.
The evidence of J.H.’s speech and language services at Crossroads is acknowledged in the IEP for the 2007-08 school year and was discussed at length by the District Court. But the fact that J.H. received speech and language services at Crossroads did not convince the District Court that he required those services, and we too are unpersuaded. The record makes clear that Crossroads provides large-group speech and language therapy to all of its students. Thus, J.H.’s participation in group speech and language therapy at Crossroads does not reveal anything about his individual needs. And, although J.H. was also enrolled in small group therapy at Crossroads, receiving services does not, in itself, prove the need for services. Even if accepted as some evidence of need, the enrollment does not require the conclusion that the parents demand. J.H.’s enrollment in small group therapy was based on his Crossroads admissions screening as well as a December 2005 evaluation which revealed that he had a low working memory score. The admission screening information and the December 2005 evaluation existed when the initial hearing officer and Appeals Panel determined that J.H. did not need speech and language services. We cannot say, any *762 more than the District Court could, that the assessment of J.H.’s needs made during those initial proceedings was erroneous. In short, there does not appear to be new evidence that went unconsidered.[6]

D. The Tuition Reimbursement Award

The IDEA provides that parents of children with disabilities who place those children in private school may seek reimbursement from their public school district when it is shown that the school district failed to offer a FAPE and that the choice of placement was appropriate. 20 U.S.C. § 1412(a)(10)(C)(ii). J.H.’s parents contend that the District Court’s overturning of the second Appeals Panel’s award of tuition reimbursement is reversible error because they had made the necessary showing to receive reimbursement. That argument, of course, depends upon a holding that the School District failed to offer a FAPE to J.H. through the 2007-08 IEP. Given the District Court’s and our conclusion to the contrary, no reimbursement was required.
III. Conclusion
The District Court’s description of the facts reflects a fair and accurate review of the administrative record with respect to J.H.’s education. There is no error, let alone clear error, in the Court’s factual determinations. The conclusion that the School District offered J.H. a FAPE through its 2007-08 IEP is legally sound. Accordingly, though we can certainly appreciate the intense interest the parents have in J.H.’s welfare and their desire that he receive the best possible education, we must affirm the judgment of the District Court.

. On August 31, 2007, J.H. and his parents filed a complaint in the United States District Court for the Eastern District of Pennsylvania challenging the June 2, 2007 Appeals Panel decision. On March, 20, 2008 the District Court affirmed the Appeals Panel decision in its entirety. See J.H. v. Souderton Area Sch. Dist., Civ. A., No. 07-3658, 2008 WL 746823 (E.D.Pa. Mar.20, 2008). That decision is not the subject of this appeal.

. We recognize that appellants include not only J.H.’s parents but J.H. himself. However, for ease of reference, we will refer to the appellants simply as the "parents” throughout the discussion herein.

. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and pursuant to a grant of jurisdiction contained in the IDEA, 20 U.S.C. § 1415(i)(3)(A). We have jurisdiction under 28 U.S.C. § 1291.

. It is not clear from the record whether J.H.’s parents ever granted the school permission to conduct its own OT evaluation.

. We also agree with the District Court that there is insufficient evidence to support the idea that J.H.’s handwriting issues were of such a nature that the School District can be presumed to have been aware of the need for OT services. Souderton I, 2009 WL 349733, at * 13. The parents do not appear to challenge the District Court's factual findings regarding this matter and so we need not repeat those findings here.

. We also agree with the District Court that the IEP does, in fact, contain some speech and language services. Specifically, under the IEP, J.H.’s special education teacher must consult with a speech therapist on a monthly basis. As the District Court held, the offer of a monthly consultation with the speech therapist was "sufficient to meet the needs J.H. was believed [to] have at the time.” Souderton, 2009 WL 349733, at * 12.